BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  Elizabeth Brancart (SBN 122092)
Post Office Box 686
Pescadero, California 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOLASADE OTUDEKO and DANIEL CARROLL, each individually and on behalf of the GENERAL PUBLIC,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>PAULINE RAVANI, individually and as Trustee of the RAVANI TRUST dated November 17, 1993; and "SPIKE" RAVANI,<br><br>　　　　　Defendants. | Case No. C-04-1216 EMC<br><br>COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS |

## I. INTRODUCTION

1.　　In this action, plaintiffs seek monetary, declaratory and injunctive relief against defendants for discriminating against African Americans based on race in the ownership and operation of the rental premises located at 1215-1217 Broadway, in San Francisco, California, in violation of federal and state fair housing laws.

## II. JURISDICTION AND VENUE

2.　　Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine

plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims are related to plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.	Venue is proper under 28 U.S.C. section 1391 in that the claims alleged herein arose within this district.

### III.  INTRADISTRICT ASSIGNMENT

4.	This action is properly assigned to the San Francisco Division of the United States District Court for the Northern District of California because the claims alleged herein arose within the City and County of San Francisco, California.

### IV.  PARTIES

5.	Plaintiffs Folasade Otudeko and Daniel Carroll are an African American married couple residing in San Francisco.

6.	Plaintiffs bring this action on behalf of themselves and as representatives of the General Public pursuant to California Business and Professions Code section 17204.

7.	The rental premises located at 1215-1217 Broadway in San Francisco is a two-unit apartment building owned by the Ravani Trust dated November 17, 1993. Plaintiffs are informed and believe and thereon allege that defendant Pauline Ravani is the trustee of the Ravani Trust dated November 17, 1993.  Defendant Pauline Ravani is sued herein individually and as the trustee of the Ravani Trust dated November 17, 1993.

8.	Plaintiffs are informed and believe and thereon allege that defendant "Spike" Ravani is the son of Pauline Ravani, and assists Ms. Ravani in the operation of rental premises at 1215-1217 Broadway.

9.	At all times relevant herein, each of the defendants was the agent, employee and representative of each of the other defendants; each defendant, in doing the acts or in omitting to act as alleged in this complaint, was acting within the course and scope of his actual or apparent authority pursuant to such agency; or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each other

defendant as principal.

## V. FACTS

### A. INTRODUCTION

10. Defendants, acting individually and in concert with others, directly and through agents, have engaged in a pattern or practice of discrimination against African Americans in the operation of the rental premises at 1215-1217 Broadway. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

11. Defendants' pattern or practice of discrimination against African Americans includes, but is not limited to:

    A.    Refusing to accept or consider a bona fide offer to rent a dwelling because of race or color;

    B.    Refusing to negotiate for the rental of a dwelling because of race or color;

    C.    Using different rental approval procedures in the rental of a dwelling because of race or color;

    D.    Failing to process an offer for the rental of a dwelling because of race or color;

    E.    Discouraging any person from renting a dwelling because of race or color;

    F.    Delaying the processing of an application made by a renter because of race or color;

    G.    Providing false or inaccurate information regarding the availability of a dwelling for rental to any person, including testers, because of race or color; and

    H.    Interfering with persons in the exercise and enjoyment of rights granted or protected under the Fair Housing Act, 42 U.S.C. section 3604, and the California Fair Employment and

1         Housing Act, Government Code section 12955.

2     12.     Defendants' discriminatory policies have been perpetuated by defendants' negligent failure to hire, train, properly supervise and discipline themselves and their managers, employees and agents at the rental premises at 1215-1217 Broadway regarding their duties under federal and state fair housing laws.

### B. PLAINTIFFS' COMPLAINT

13.     During May 2003, plaintiffs Sade Otudeko and her then-fiancee Daniel Carroll were preparing for their upcoming wedding and searching for an apartment to share after their marriage. Mr. Carroll then resided in Russian Hill, the same neighborhood as the rental premises at 1215-1217 Broadway, and Ms. Otudeko lived in another part of San Francisco.

14.     On May 25, 2003, Ms. Otudeko called (415) 488-0689 to inquire about the availability of a unit advertised for rent at 1215 Broadway. She spoke with defendant Pauline Ravani and arranged to view the unit the following day.

15.     On Memorial Day, May 26, 2003, Ms. Otudeko and Mr. Carroll visited the rental premises at 1215-1217 Broadway and viewed the available unit at 1215 Broadway (the "Broadway unit"). The Broadway unit was a two-bedroom flat with hardwood floors, a view of the Golden Gate Bridge from the upstairs deck, and a garage space available for rent. The unit rented for $1,600 per month

16.     Defendant Pauline Ravani and her son, identified as "Spike," showed the Broadway unit to Ms. Otudeko and Mr. Carroll, and discussed the rental terms with them. Ms. Otudeko and Mr. Carroll expressed interest in renting the unit. Ms. Ravani gave Ms. Otudeko her lawyer's business card and told her that they had prospective tenants contact their lawyer's office to make a $500 deposit to rent the unit.

17.     Ms. Otudeko and Mr. Carroll immediately returned to Mr. Carroll's apartment in the neighborhood and discussed the unit. They decided they wanted it. That same evening, Ms. Otudeko called Ms. Ravani and told her that they definitely wanted to rent the unit and wanted to go to the lawyer's office to make the deposit. Ms. Ravani replied that

another couple had viewed the apartment after Ms. Otudeko and they were "interested." Ms. Ravani said that Ms. Otudeko would have to be patient and wait to give this other couple a chance to make the deposit.

18. The next evening, May 27, 2003, Mr. Carroll called Ms. Ravani to discuss renting the Broadway Apartment, but he was told to "be patient," and that the other couple was "still working" on making the deposit with defendants' attorney.

19. On May 29, 2003, Ms. Otudeko called the telephone number on the lawyer's business card given to her by Ms. Ravani, explaining that she wanted to come into the office to make a deposit to rent the Broadway unit. Neither the lawyer's secretary or his law partner had any idea what Ms. Otudeko was talking about. Ms. Otudeko called again later that day, but was unable to get any further information. The lawyer never returned Ms. Otudeko's calls.

20. As the weekend approached, Mr. Carroll noticed that the "for rent" sign remained up at the Broadway unit. The unit still was advertised in the *San Francisco Chronicle*. When Mr. Carroll called defendants, identified himself, and asked if the unit was still available, he was told that defendants were still waiting for the other couple to make the deposit, but had not yet had time to take down the sign or cancel the newspaper ad. Shortly thereafter, Mr. Carroll called again, did not identify himself, and asked if the unit was still available. He was told that the unit was still available and invited to view it.

21. On June 3, 2003, Ms. Otudeko contacted Project Sentinel, the private non-profit fair housing organization serving San Francisco, and complained of possible housing discrimination by defendants.

### C. PROJECT SENTINEL'S INVESTIGATION

22. As part of its investigation into Ms. Otudeko's complaint of housing discrimination, Project Sentinel used fair housing testers to gather evidence about the operation of the rental premises at 1215-1217 Broadway. That investigation revealed that defendants discriminate against African Americans on the basis of race in the operation of their property in violation of federal and state fair housing laws.

23. On June 7, 2003, at 12:45 p.m., Tester 2, a Caucasian woman posing as a prospective renter, arrived at the Broadway unit and met with Ms. Ravani and Spike. After viewing the unit, defendants told Tester 2 that they would like her to take the unit. Spike said that another couple had viewed the unit that morning, but that they might have trouble getting out of their old lease and he would rather not have those complications. Tester 2 said she would get back to them in a few days and left.

24. On June 7, 2003, at 1:25 p.m., Tester 1, an African American woman posing as a prospective renter, arrived at the Broadway unit and met with Ms. Ravani and Spike. After viewing the unit, defendants told Tester 1 that the unit was available, but that they had promised it to a man, and they were giving him a chance to bring in the deposit. After the man, there was another woman who wanted the place. He told Tester 1 to call back in a few days to check on the apartment.

25. On June 11, 2003, Daniel Carroll called defendants and spoke with Spike. Spike informed him that defendants were still waiting on the other couple to put down the deposit. Mr. Carroll offered to put down a full security deposit ($1,600) immediately to get the unit, but Spike said he would have to wait.

26. On June 12, 2003, Ms. Otudeko called Project Sentinel again because the Broadway unit was still available according to the advertisement in the newspaper and the sign in the window. In response, Project Sentinel had Testers 1 and 2 follow up on their contacts with defendants the weekend before.

27. On June 13, 2003, at 3:00 p.m., Tester 1 called Ms. Ravani. Tester 1, the African American woman, described and identified herself over the telephone. Ms. Ravani told Tester 1 that the unit was still available, but that there were still two people before her who wanted the unit, and that she should call back in a few weeks to check the availability.

28. A short time later on June 13, 2003, Tester 2 called Ms. Ravani. Tester 2, the Caucasian woman, described and identified herself over the telephone. Ms. Ravani told Tester 2 that the unit was still available and that she could bring a deposit down right now to obtain the apartment from them.

29. Later that afternoon, June 13, 2003, Ms. Otudeko called Ms. Ravani. Ms. Otudeko identified herself and offered to pay the first and last month's rent ($3,200) immediately to obtain the apartment. Ms. Ravani claimed that she did not handle the rental process and did not know whether the unit was still available. Ms. Ravani told Ms. Otudeko that they had her telephone number and to be patient.

30. On July 3, 2003, Tester 1 called Ms. Ravani. Tester 1, the African American woman, identified and described herself to Ms. Ravani. Tester 1 asked about the availability of the Broadway unit. Ms. Ravani told Tester 1 that the unit was not yet rented, but still was promised to the two people who were before Tester 1, who were still "anxious" about the unit.

31. Plaintiffs are informed and believe and thereon allege that defendants ultimately rented the Broadway unit to Caucasian tenants who first viewed and applied to rent the unit in mid-July and moved in during August 2003.

## D. INJURIES

32. By reason of defendants' unlawful acts and practices, Ms. Otudeko and Mr. Carroll have suffered loss of housing, violation of their civil rights, and emotional distress and attendant bodily injury, including headaches and sleep loss, and other special and general damages according to proof. Accordingly, plaintiffs are entitled to compensatory damages.

33. In doing the acts of which plaintiffs complain, defendants and their agents and employees acted with oppression, fraud and malice, and with wanton and conscious disregard of the rights of plaintiffs. Accordingly, plaintiffs are entitled to punitive damages.

34. There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, plaintiffs are entitled to declaratory relief.

35. Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern and practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from

defendants' acts and the pattern or practice of discrimination against African Americans unless relief is provided by this Court. Accordingly, plaintiffs are entitled to injunctive relief.

## VI. CLAIMS

### A. FIRST CLAIM

**[Fair Housing Act]**

36. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

37. Defendants have injured plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C sections 3601 et seq..

### B. SECOND CLAIM

**[The Civil Rights Act of 1866]**

38. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

39. Defendants violated the Civil Rights Act of 1866, 42 U.S.C. section 1982, when defendants injured plaintiffs by discriminating against plaintiffs in the rental of housing because of race or color.

### C. THIRD CLAIM

**[California Fair Employment and Housing Act]**

40. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

41. Defendants have injured plaintiffs in violation of the California Fair Employment and Housing Act, Government Code sections 12927 and 12955 et seq.

### D. FOURTH CLAIM

**[California Unruh Civil Rights Act]**

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

43. Defendants have injured plaintiffs in violation of the Unruh Civil Rights Act, California Civil Code section 51 et seq., by operating their rental premises, a business

establishment, in a manner that discriminates against African Americans because of race.

## E.  FIFTH CLAIM

### [Unfair Business Practices]

44.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

45.  In acting as herein alleged, defendants have engaged in a pattern or practice of unlawful discrimination in the operation of their rental premises, and therefore have engaged in acts of unfair competition as the same is defined in section 17200 of the California Business & Professions Code.

46.  In bringing this action for injunctive relief, plaintiffs are acting in the interest of themselves and the General Public pursuant to the California Business and Professions Code section 17204.

## F.  SIXTH CLAIM

### [Negligence]

47.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 of the complaint herein.

48.  Defendants owed each plaintiff a duty of care in the operation of the Apartments. Defendants negligently violated that duty by discriminating against African Americans on account of their race or color.  Defendants' violation of that duty was the result of negligence, including but not limited to:

    A.    Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

    B.    Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;

    C.    Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements

of state and federal fair housing laws;

D. Defendants' negligent failure to follow standard, recognized rental practices of the community; and/or,

E. Defendants' negligent failure to exercise the ordinary and reasonable care and diligence required of a housing provider in the operation and management of their rental premises.

49. As a legal result of defendants' negligent conduct, plaintiffs have suffered loss of important housing opportunity, violation of their civil rights, and have suffered emotional distress and attendant bodily injury.

## VII. RELIEF

Wherefore, plaintiffs pray for judgment against defendants as follows:

1. That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to race or color;

2. That the Court declare that defendants have violated the provisions of the applicable federal and state fair housing laws;

3. That the Court award compensatory and punitive damages to plaintiffs according to proof;

4. That the Court award up to three times the amount of actual damages for each plaintiff against each defendant pursuant to the Unruh Civil Rights Act;

//
//
//
//
//

COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF;
DEMAND FOR TRIAL BY JURY; CERTIFICATION OF INTERESTED PERSONS

10

5. That the Court grant costs of suit, including reasonable attorneys' fees; and,

6. That the Court grant all such other relief as the Court deems just.

Dated: March 25, 2004.

BRANCART & BRANCART

_____
Elizabeth Brancart
Attorneys for Plaintiffs

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a jury trial.

Dated: March 25, 2004.

BRANCART & BRANCART

_____
Elizabeth Brancart
Attorneys for Plaintiffs

## IX. CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: March 25, 2004.

BRANCART & BRANCART

_____
Elizabeth Brancart
Attorneys for Plaintiffs